ARKANSAS RAILROAD COMMISSION v. INDEPENDENT BUS
LINE (No. 9800)

LOONEY v. CADDO TRANSFER & WAREHOUSE COMPANY
(No. 9816).

Opinion delivered July 12, 1926.

AUTOMOBILES—REGULATION OF MOTOR BUSSES.—Under Acts 1921, p. 183,
§ 5, conferring upon the Railroad Commission jurisdiction of all
matters pertaining to the regulation and operation of common
carriers, the Railroad Commission has no jurisdiction to require
a certificate of public convenience and necessity to be secured to
operate motor busses over State highways, in view of the repeal
of similar authority given to the Corporation Commission under
Acts 1919, p. 423, § 13.

Appeals from Pulaski Circuit Court, Second Division;
*Richard M. Mann*, Judge; affirmed.

*H. W. Applegate*, Attorney General, *Brooks Hays*,
Assistant, and *Davis & Costen*, for appellant.

*R. M. Hutchins, Coulter & Coulter, Kirby & Hays,
Oren Parmeter, W. G. Dinning, Peter A. Deisch, George
A. McConnell* and *Downie & Schoggen*, for appellee.

HUMPHREYS, J.   Cases Nos. 9800 and 9816 have been
consolidated, since the legal question involved in each
is identical.

Case No. 9800 arose out of an application on March
26, 1926, by the Independent Bus Lines, Incorporated, to
the Arkansas Railroad Commission for a permit to
operate a motor bus line on certain roads leading out of
Helena, over which the Messino Bus Company was
operating a motor bus line under a certificate of public
convenience and necessity issued to it by the Railroad
Commission.   The Messino Bus Company intervened and
contested the right of the applicant to a permit on the
ground that additional bus service was not necessary on
said highways.   The petition was heard and denied, from
which order of denial an appeal was prosecuted to the
circuit court of Pulaski County.   On May 15, 1926, the
appeal was heard in the circuit court, and a judgment
was rendered setting aside the order of the Railroad

Commission, from which an appeal has been duly prosecuted to this court.

Case No. 9816 arose out of an application on March 13, 1926, by the Caddo Transfer & Warehouse Company to the Arkansas Railroad Commission for a permit to operate a motor bus line over certain public highways in Union and Ouachita counties, Arkansas, over which J. P. Looney was operating a motor bus line under a certificate of public convenience and necessity issued to him by the Railroad Commission. Notice of the application was given to J. P. Looney, who appeared and contested the applicant's right to a permit on the ground that additional motor bus service was not necessary on said highways. Upon a hearing of the cause the Commission entered an order denying the application, from which an appeal was taken to the Pulaski Circuit Court, Second Division. On May 31, 1926, the appeal was heard and a judgment was rendered setting aside the order of the Commission, from which an appeal has been duly prosecuted to this court.

The record reflects that the Independent Bus Line, the Messino Bus Company, the Caddo Transfer & Warehouse Company and J. P. Looney had complied with the rules and regulations of the Arkansas Railroad Commission, and that it refused permits to the Independent Bus Line and the Caddo Transfer & Warehouse Company to operate motor bus lines upon the highways designated in the respective petitions because it had theretofore granted permits to the Messino Bus Company and J. P. Looney to operate motor bus lines over practically the same route and under the same schedules, and that the public convenience and necessity did not require the service of additional companies.

In refusing the permits, the Arkansas Railroad Commission was guided by the following rule it had theretofore promulgated:

"No person or motor transportation company shall begin to operate any motor-propelled vehicle for the transportation of persons or property, or both, for com-

pensation between fixed termini or over a regular or irregular route in this State, without first obtaining from the Railroad Commission a certificate declaring that a public convenience and necessity require such operation.''

The applicants challenged the authority of the Railroad Commission to promulgate such a rule or to deny them the privilege of operating motor bus lines over the highways in question. The circuit court sustained the contention of the applicants. The sole question therefore presented by this appeal is whether the Legislature ever granted authority to the Arkansas Railroad Commission to issue permits or certificates of public convenience and necessity to individuals, partnerships or corporations to operate motor-propelled vehicles to transfer persons or property for compensation over the highways of the State. This is the very question which this court reserved for future decision in the case of *Kinder* v. *Looney,* 171 Ark. 16, 283 S. W. 9. If the Arkansas Railroad Commission has such authority, it was conferred by § 5, act 124, Acts of 1921, which is as follows:

''The jurisdiction of the commission shall extend to and include all matters pertaining to the regulation and operation of all common carriers.''

It was said in *Kinder* v. *Looney, supra,* that ''the statute under consideration in this case does not confer express authority upon the Arkansas Railroad Commission to establish a rule that no automobile transportation company shall operate for the transportation of persons for hire over a regular route in this State without first having obtained from the Commission a certificate declaring the public convenience and necessity require such operation.'' It follows then, that, if such authority exists in the Railroad Commission, it is by necessary implication from language used in the statute. The language is not broad enough to justify the implication. ''Regulation and operation'' does not import the right of denial or the right to grant an exclusive franchise or permit which, in effect, involves a denial to some. ''Regulation'' is not synonymous with ''prohibition,''

and a delegation of the authority by the Legislature to regulate does not imply authority to prohibit. *Tuck* v. *Waldron,* 31 Ark. 462; *Swaim* v. *Morris,* 93 Ark. 363, 125 S. W. 432; *Little Rock* v. *Reinman,* 107 Ark. 174, 155 S. W. 105; *Bryan* v. *Malvern,* 122 Ark. 379, 183 S. W. 957; *Incorporated Town of Paris* v. *Hall,* 131 Ark. 134, 198 S. W. 705; *North Little Rock* v. *Rose,* 136 Ark. 298, 206 S. W. 449. We think the Legislature never intended for such an implication to be drawn from the language used in the statute, for the reason that the act in which the section appears specifically repealed § 13 of act 571 of the Acts of 1919, which conferred authority on the Arkansas Corporation Commission (now abolished) to grant certificates of convenience and necessity to public service corporations. The specific repeal of such power indicates very clearly that the Legislature had no intention of again conferring the power upon the new body through inference or implication.

No error appearing, the judgments are affirmed.

McCULLOCH, C. J., (dissenting). It is well understood that an administrative body such as the Arkansas Railroad Commission can exercise only such power as is delegated to it by the lawmakers, either in express terms or by necessary implication. The statute creating the Railroad Commission does not, in express words, confer authority to place a limit on the number of utilities to operate along a given route or in any given territory, and the question presented in this case is whether or not such authority is necessarily implied from the general powers expressly conferred. My conclusion is that the statute is so broad and comprehensive in its language in conferring upon the commission authority to control all public utilities that the power to place a limit on the number of utilities is necessarily implied. In testing the effect of the statute, consideration should be given to the matters sought to be controlled and the purpose of the lawmakers in placing those matters under statutory control.

The highways of the State are for common use, and, if we were dealing merely with the regulation of the ordinary use of highways, the authority to regulate such use would not imply authority to exclude, but the statute deals, not with such use of the highway as is common to all, but with special use which is merely a privilege, and which can be either granted or withheld by the lawmakers at will. In other words, the use of the public highway by a carrier for profit is not such use as is the common right of all, but is a special privilege. This principle has been recognized by all authorities on the subject. In a recent work on control of public utilities, it is said:

"This private use of our streets and highways obviously differs very radically from that of converting them into places of business and using them for private gain or profit, such as operating motor vehicles thereon for the transportation of the public and its property for hire. This use is special and extraordinary, and may only be enjoyed as a privilege or licensed permission on such conditions as the State or its duly authorized agency may see fit to impose. The operation of motor vehicles for hire, being a privilege and not a right, may be granted or withheld as the State may determine, and, if granted, the State may decide to whom and under what conditions the grant shall be made. As permission to employ the highways to conduct business thereon for private gain may be entirely denied, it follows that the privilege may be extended on such conditions as the State may determine." Pond on Public Utilities, § 753.

In the exercise of authority in determining who may enjoy the privilege of using the highways as a carrier and upon what terms the privilege may be exercised, sole consideration must be given to the convenience of the public, for, the use of the highways as a common carrier being merely a privilege, it may be withheld altogether. The term "certificate of convenience and necessity," often used in statutes of this kind, refers to

the convenience and necessity of the public, and not that of the corporation to which the privilege is granted.

When the construction of the statute now before us is approached in the light of these principles, it seems clear to me that the language is broad enough to confer authority upon the Railroad Commission to determine the number of utilities which may occupy a given field or territory. The language is the same with regard to all utilities. It does not apply solely to bus lines, and, if the Commission has no authority to determine the number of bus lines which may operate along a given route, then there is no express authority in the statute to limit the number of other utilities, and all who apply for permits must be treated alike. I cannot believe that the lawmakers intended any such result.

It will be noted that the statute does not merely confer the right to regulate, but it declares that the power of the Commission shall "extend to and include all matters pertaining to the regulation and operation of all common carriers." The authority is not merely to regulate common carriers, but to control all matters pertaining to such regulation and operation. It would appear that the number of utilities to operate in a given territory or along a given route should be deemed a matter "pertaining to the regulation and operation" of common carriers, and this should apply with special force to a bus line operating along a public highway, for the safety and convenience of the public are necessarily involved in determining the number of such carriers which should operate along the same route. The principle is "as old as the hills" that, when power is conferred in express though general terms, there is a necessary implication of sufficient authority to carry those powers into execution. *McCulloch* v. *Maryland,* 4 Wheat. (U. S.) 316.

I attach no importance to the fact that the statute repealed a section of the former statute conferring power upon the Corporation Commission to issue certificates of convenience and necessity and failed to incorporate the

same in the new statute defining the powers of the Railroad Commission. This change in the language of the statute occurred in transferring authority over local utilities to municipal corporations of the State, and did not manifest an intention on the part of the lawmakers to withhold such control and authority of the Railroad Commission over utilities outside of municipalities. On the contrary, the lawmakers, in passing the new statute, used different and broader language than that used in the old statute, and made it unnecessary to confer in express terms authority to refuse permits. The language of the old statute defining the authority of the Corporation Commission was that "the jurisdiction of the Commission shall extend to and include common carriers * * ." But, as we have already seen, the language of the present statute is much broader and declares that jurisdiction shall "extend to and include all matters pertaining to the regulation and operation of common carriers." Section 1 of the act creating the Commission is not without considerable force in the solution of this question. That section reads as follows: "That the intent of this act is that the present Arkansas Corporation Commission be abolished, and that all its proper functions, not elsewhere herein delegated, be transferred to the Arkansas Railroad Commission as herein constituted." Acts 1921, p. 177. This language used by the lawmakers clearly evinces an intention to transfer all of the powers originally vested in the Corporation Commission to the Railroad Commission except those which had been otherwise delegated. Now, the language of this section may not of itself be sufficient to enlarge powers not otherwise expressly conferred, but it is certainly of much value in construing the language of that part of the statute which defines the power and authority of the new Commission. The primary object of construction of statutes is to ascertain from the language used the true intention of the lawmakers, and mere form of expression should be disregarded. *Rayder* v. *Warrick,* 133 Ark. 491, 202 S. W.

8; *Howell* v. *Lamberson,* 149 Ark. 183, 231 S. W. 872; *Standard Oil. Co.* v. *Brodie,* 153 Ark. 124, 239 S. W. 753.

It seems to me therefore that the majority have taken a very narrow view of this language, and that the subject-matter calls for a liberal rather than a restricted interpretation.

Much is said in the briefs of counsel about the definition of the term "regulation." Standing by itself, the word may be construed in many ways, but, when used with reference to the granting of a mere privilege, which is not a thing of common right and may be either granted or withheld at the will of the sovereign, it is a term of sufficient breadth to warrant the interpretation contended for by counsel for the State, and, when considered with the context, it seems clear to me that the lawmakers intended to commit to the Railroad Commission authority to determine all matters relating to the regulation, control and operation of common carriers, and that this necessarily includes the power to determine when and by whom and under what circumstances the privilege should be exercised. The decisions referred to in the opinion of the majority relate to mere matters of regulation of business which is not necessarily of public character. Such lines of business covered by those decisions may be regulated, as they are not of a public nature, whereas the use of a public highway for profit is not of a private nature, but is one in which private rights are not involved and the public alone is concerned therein. Hence the power to regulate necessarily includes the right to restrict the number of privileges to be granted.

The only decision bearing directly on the construction of a similar statute is the decision of the New Jersey court in *Zellers* v. *Cumberland Traction Co.,* 127 Atl. 268, where it was held, under a statute almost identical with ours, that the Board of Public Utility Commissioners was authorized to limit the number of permits.

I am authorized to say that Mr. Justice Wood agrees with me in all that I have said on this subject.