## HARRIS v. MUNICIPAL GAS CO.

### No. 12789.

Court of Civil Appeals of Texas. Fort Worth.
March 18, 1933.

Rehearing Denied April 15, 1933.

Harris & Martin, of Wichita Falls, for appellant.

Carrigan, Hoffman & Carrigan, of Wichita Falls, and Karl F. Griffith, Roy C. Coffee, and Marshall Newcomb, all of Dallas, for appellee.

LATTIMORE, Justice.

On August 24, 1931, the city of Wichita Falls enacted an ordinance reducing the rates for gas which might be lawfully charged by public utilities within its corporate limits. The appellee, a public utility operating under a franchise in the sale of gas in said city, petitioned to the railroad commission of Texas for a revision under article 6058, R. S., of the action of Wichita Falls, and the railroad commission made this order:

"On this 28th day of September, 1931, this cause came on to be heard before the Railroad Commission of Texas upon the verified petition of Municipal Gas Company in the matter of an appeal from an ordinance of the City of Wichita Falls, Texas, reducing the rates and charges of Municipal Gas Company for natural gas supplied and natural gas service rendered to domestic consumers in said city.

"And it appearing to the Commission that the Municipal Gas Company has tendered its bond, with good and sufficient surety, in the amount of Sixty Thousand ($60,000.00) Dollars, conditioned for the refunding of any excess of rates or charges collected by it over and above the rates and charges that shall be finally determined to be a fair and reasonable return upon the value of the property used and useful in supplying natural gas and natural gas service to the City of Wichita Falls, Texas.

"It is therefore ordered that the petition of Municipal Gas Company on appeal herein be allowed; that the bond tendered be approved and accepted; and that pending a final hear-

ing and determination of this cause, the said ordinance, and the rates and charges as fixed and prescribed in said ordinance, are hereby suspended and superseded.

"It is further ordered and provided that at any time the Commission may deem it necessary, the Municipal Gas Company shall be required to give such further bond or security as the Commission may prescribe, after giving reasonable notice to the Municipal Gas Company."

The merits of that appeal have not been decided by the railroad commission. The appellee thereupon continued to collect on the rate in force before said ordinance. On March 14, 1932, appellant procured in a justice court a judgment against appellee for $4.55, being the excess in an amount of a collection by appellee from appellant for gas delivered under the rate before the ordinance was passed over the rate fixed in the ordinance. Appellee sought in the district court of Wichita county an injunction to restrain the execution of that justice court judgment, and on trial a permanent injunction was ordered, restraining the enforcement of such judgment, from which this appeal is taken.

Appellant concedes that if the railroad commission had the power to make such an order as was made, and in the manner it was made, then the judgment of the district court was proper and thus as a good officer of the court strips the case of trifling matters and goes to the real purpose of his proceedings.

Article 6058, R. S. [Acts 36th Leg. (3d called session) 1920, c. 14, § 6], provides: "When a city government has ordered any existing rate reduced, the gas utility affected by such order may appeal to the Commissioner by filing with the Commission, on such terms and conditions as the Commission may direct, a petition and bond to review the decision, regulation, restriction, ordinance, or order of the city, town or municipality. Upon such appeal being taken the Commission shall set a hearing and may make such order or decision in regard to the matter involved in the determination, decision, ordinance or order, of the City, town or municipality, as the Commission may deem just and reasonable. Whenever a public utility so appeals from the decision, restriction, ordinance or order of the city, or town or municipality, to the Commission, the Commission shall hear such appeal de novo and shall treat the appeal or complaint as though it were an original complaint. Whenever any local distributing company or concern whose rates have been fixed or may hereafter be fixed by any municipal government desires a change of any of its rates, rentals or charges, it shall make its application to the municipal government of the city, town or municipality in which such utility is located and such municipal government shall determine said application, within sixty days after said application is presented to it, un-

less the determination thereof may be longer deferred by agreement between the municipality and the gas utility affected. If the municipal government should reject such application or fail or refuse to act on it within sixty days, then the utility may appeal to the Commission as herein provided. But said Commission shall determine the matters involved in any such appeal within sixty days after the filing by such utility of such appeal with said Commission or such further time as such utility shall in writing agree to, but the rates fixed by such municipal government shall remain in full force and effect until ordered changed by the Commission."

This act as originally passed contained, just preceding the above, this: "Nothing in this Act shall restrict the rights of cities, towns and municipalities to control the use of their public streets and alleys; and nothing in this Act shall be construed as taking away from the cities, towns or municipalities of this State any of their existing powers to regulate the rates, service, rules, regulations, and practices of public utilities operating in such cities, towns or municipalities," which was omitted by the codifiers in the 1925 revision.

If the order of the railroad commission was authorized, it must be by virtue of its general powers, or by virtue of article 6058, R. S. We proceed to examine the first. When an enterprise is affected by a public use, the power of the government of such public exists to regulate its rates. Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77. Rate making in such cases, as far as prospective effect is decreed, is a legislative function, City of Denison v. Municipal Gas Co., 117 Tex. 291, 3 S.W.(2d) 794, and in this state is inherent in the Legislature of Texas except such portion as is delegated to the United States by virtue of the United States Constitution, Texas Steel Co. v. Fort Worth & D. C. Ry. (Tex. Civ. App.) 45 S.W.(2d) 794, 795, opinion by our lamented Mr. Justice Buck.

The railroad commission is not created by the Constitution, but is created by the Legislature, although some of its powers, once the body is created, are prescribed by the Constitution. City of Denison v. Municipal Gas Co., supra. It thus follows as to this litigation that the railroad commission acts only as an agent of the Legislature and with no power except such as is given it by statute.

Some powers given the railroad commission are legislative, e. g., rate making, while others are of a judicial nature, Producers' Refining Co. v. M., K. & T. Ry. (Tex. Com. App.) 13 S.W.(2d) 679, of which are the power to investigate penalties, hear complaints, article 6058, R. S., determine when wells shall be plugged, etc., as well as to determine the conditions of an appeal to the railroad commission on this case. The constitutionality of the delegation of these various duties to one body has been upheld. City of Denison v.

Municipal Gas Co., supra. Let us examine its statutory authority: Article 6058 of the statutes is a curious one. It will be observed that it consisted apparently of three divisions: First, the section above quoted, eliminated by the codifiers, which apparently was intended to deny any original jurisdiction by the railroad commission over municipal gas rates. Second, a case where a city by its city legislative body has reduced a gas rate in which event the gas utility may appeal by petition and "bond" in "terms and conditions as the Commission may direct," in which event a hearing shall be had and the commission "may make such order * * * in regard to the matter * * * as the Commission may deem just and reasonable." Then follows the provision for a hearing de novo. Next, in a separate sentence, procedure is provided where a utility desires a change in existing rates.

■ The fact that many times 60 days have gone by without determination of the appeal cannot affect the question of the right to order a supersedeas bond at the beginning of the 60 days. The remedy to end abusive delay is ample, but is not to be confounded with nullification of valid orders made at the outset.

■ We believe the statute authorized the railroad commission to use its discretion as to the terms and conditions of the bond. This includes the power to allow a supersedeas. In the first place, the utility company would have a right to appeal to the court for injunctive relief if such bond were not provided for. Oklahoma Natural Gas Co. v. Russell, 261 U. S. 290, 43 S. Ct. 353, 67 L. Ed. 659. This probably was in the mind of the Legislature. In the second place, to hold otherwise is to nullify the provision of the statute for a bond, and finally, in view of the wide latitude of supersedeas in appeals in other matters in this state, it is probable that such was the intention of the Legislature when it said "on such terms and conditions as the Commission may direct."

■ From the many differences made in the procedure by which reductions by municipalities are disposed of, from the procedure by which rate increases sought by utilities are disposed of, we conclude that the final clause of the article, "but the rates fixed by such municipal government shall remain in full force and effect until ordered changed by the Commission," has reference only to cases where the utility has sought to increase pre-existing rates. It is a part of a sentence referring to "such appeal." The appeal referred to is an appeal provided for in the preceding sentence, from "such application" to increase pre-existing rates. Good reason for this distinction exists. In the reduction case, the change attempted is upon the rates under which the utility was willing to undertake the business, and such reduction, if unjust, might destroy it. From such threat the Legislature, we believe, desired to give it an opportunity to save itself pending final order. In the hiking of the rates, however, the utility seeks to better the contract under which it had been willing to work. In such cases the presumptions were against it, and the Legislature, we believe, saw fit to require that it continue in statu quo until final disposition of its request.

■ We do not see anything in this holding which violates article 1, § 28, of the Constitution. No other agency is suspending the law than the Legislature itself. True, it has delegated to the very agent that performs at its command a legislative function to wit, rate making, to also act in the manner the Legislature directs in allowing a supersedeas. The rate making, already declared constitutional, is no more violative of such article of the Constitution than is the other.

We have examined all assignments of error.

The judgment is affirmed.