409 P.2d 720

E. T. "Eddie" WILLIAMS, George F. Senner, Jr., and Jack Buzard as the Arizona Corporation Commission, Appellants,

v.

PIPE TRADES INDUSTRY PROGRAM OF ARIZONA, a trust, Arizona Public Service Company, a corporation, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry, Local No. 469, and Sheet Metal Workers International Association, No. 359, Appellees.

No. 7988.

Supreme Court of Arizona, En Banc.

Jan. 13, 1966.

Rehearing Denied March 15, 1966.

.Darrell F. Smith, Atty. Gen., Robert W. Pickrell, former Atty. Gen., Frederick E. Kallof, Sp. Counsel, Gordon Aldrich, Sp. Counsel, Phoenix, for appellants.

Lewis,. Roca, Scoville, .Beauchamp & Linton, Snell & Wilmer, Minne & Sorenson, Phoenix, for appellees.

STRUCKMEYER, Chief Justice.

This appeal is from a permanent writ of prohibition issuing out of the Superior Court of Maricopa County against appellants as the Corporation Commission of Arizona on these facts:

On September 25, 1962, Frederick Kallof applied to the Commission for a certificate of public convenience and necessity. A hearing on his application was held by the Corporation Commission on October 9 and 10, 1962, and then continued to December 3, 1962. However, prior to a resumption of the hearing, appellees applied for a writ of prohibition in the superior court, alleging that the Commission lacked jurisdiction to entertain the application. The alternative writ of prohibition was granted and, on December 7, 1962, it was made permanent. The writ prohibited appellants from taking any further steps in connection with Cause No. U–1866 pending before the Commission. This appeal followed.

■ The Constitution of this state defines public service corporations.

"All corporations other than municipal engaged in carrying persons or property for hire; *or in furnishing gas, oil, or electricity for light, fuel, or power; or in furnishing water for irrigation, fire protection, or other public purposes; or in furnishing, for profit, hot or cold air or steam for heating or cooling purposes;* or in transmitting messages or furnishing public telegraph or telephone service, and all corporations other than municipal, operating as common carriers, shall be deemed public service corporations." Art. 15, § 2, Ariz. Const. A.R.S. (Emphasis supplied.)

Article 15, § 2 is also applicable to individuals. Van Dyke v. Geary, 244 U.S. 39, 37 S.Ct. 483, 61 L.Ed. 973.

Kallof applied for a certificate to:

"furnish as a public utility hot or cold circulating chemicals, gases or water for heating or cooling purposes throughout the State of Arizona; and to furnish hot or cold air or steam for heating or cooling purposes throughout the State of Arizona."

The application is divisible into two parts:

1. To furnish hot or cold circulating chemicals, gases or water for heating or cooling purposes; and

2. To furnish hot or cold air or steam for heating or cooling purposes.

It is immediately apparent that the application in its second part, to furnish hot or cold air or steam for heating or cooling purposes, is within the definition of a public service corporation. This is not questioned by appellees but they urge that the Commission does not, under this and other constitutional and statutory provisions, have the right to restrict competition by the issuance of a certificate of public convenience and necessity.

We have said about Article 15 of the Constitution that the Corporation Commission's powers do not exceed those to be derived from a strict construction of the Constitution and implementing statutes. Commercial Life Insurance Co. v. Wright, 64 Ariz. 129, 166 P.2d 943. This is consistent with the proposition from which there seems to be no dissent that a public service commission has no inherent power. 43 Am.Jur. 701, § 193.

The Corporation Commission, by Art. 15, § 3 of the Arizona Constitution, is authorized to prescribe "just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations within the State * * *" and it may "make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business * * *." We have repeatedly held that the power to make reasonable rules and regulations and orders by which a corporation shall be governed refers to the power to prescribe just and reasonable classifications and just and reasonable rates and charges. Southern Pacific Co. v. Arizona Corporation Commission, 98 Ariz. 339, 404 P.2d 692; Corporation Commission of Arizona v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443.

The Constitution does not authorize the Commission to issue public certificates of convenience and necessity, but by Article 15, § 6 of the Constitution the legislature is empowered to enlarge the powers and duties of the Commission. The legislature has, indirectly, authorized the Commission to issue certificates of public convenience and necessity in certain instances.

"A. A street railroad, gas, electrical, telephone or water corporation shall not begin construction of a street railroad, a line, plant or system, or any extension thereof, without first having obtained from the commission a certificate of public convenience and necessity.

\* \* \* \* \* \*

"C. No such corporation shall exercise any right or privilege under any franchise or permit without first having obtained from the commission a certificate of public convenience and necessity." A.R.S. § 40–281.

The legislature has also provided for the certification of motor vehicle carriers, A.R.S. § 40–607. But nowhere in the statutes can there be found either direct or implied authority for the Commission to grant an exclusive monopoly through the issuance of a certificate of public convenience and necessity to those engaging in the business of furnishing hot or cold air or steam for heating or cooling purposes.

In arriving at the conclusion that there is no authority for the Commission to grant such a certificate of public con-

venience, we are influenced both by consideration of our prior decisions as well as the law we have found applicable elsewhere.

The law is summarized in 28 Mich.Law Rev. 107, at pp. 122–124.

"The power to require certificates of convenience and necessity must be given expressly to a commission. It will not be implied from statutes giving the commission a power of supervision of utilities; nor will it be implied from a general power to regulate them. Requiring certificates of convenience and necessity is not an aspect of supervision or regulation, for it precedes these. The power to regulate established utilities and the power to prohibit the entrance of new ones are different."

In Arkansas Railroad Commission v. Independent Bus Lines, 172 Ark. 3, 285 S.W. 388, there is discussed the power of the Arkansas Railroad Commission to issue certificates of convenience and necessity:

"It follows, then, that if such authority exists in the Railroad Commission, it is by necessary implication from language used in the statute. The language is not broad enough to justify the implication. 'Regulation and operation' does not import the right of denial or the right to grant an exclusive franchise or permit which, in effect, involves a denial to some.

'Regulation' is not synonymous with 'prohibition,' and a delegation of the authority by the Legislature to regulate does not imply authority to prohibit." 172 Ark. 3, 5; 285 S.W. 388, 390.

The same result was reached in Railroad Commission v. United Gas Pipe Line Co., Tex.Civ.App. (1962), 358 S.W.2d 907:

"If United has such a monopoly, then all other in place gas pipe lines supplying cities and other customers would also have similar monopolies. Should these momentous, far-reaching consequences be accomplished by judicial construction which in this case would be pure judicial legislation? Our answer is 'No.'

"Richland Gas Co. v. Hale, 169 La. 300, 125 So. 130, is a very persuasive authority. It is based, in part, upon Texas authority. The issue there presented was whether a gas utility had the right to transact its business before the Public Service Commission of the State had found its business operations to be in the public interest. In answering in the negative the Court stated:

" 'The commission has the power to supervise and regulate public utilities as it finds them. It has nothing to do with creating or bringing them into existence. * * *

" 'There is no law of this state requiring the grantee of a municipal franchise to secure from the commis-

sion a certificate of public convenience or necessity before engaging in the business provided for by the franchise.

" ' "The commission possesses no other power than that conferred upon it by the law of its creation, and under that law it has at the utmost only the power that is conferred in express terms or by necessary or fair implication." * * * ' " 358 S.W. 2d 907, 917.

See also Application of Consumers Public Power District, 172 Neb. 315, 109 N.W.2d 372, where it was held that in the absence of statutory authorization the Commission lacked jurisdiction to issue certificates of convenience and necessity prescribing the territory in which a public power company may render service.

In Corporation Commission of Arizona v. Pacific Greyhound · Lines, supra, the Commission contended that the statute, now A.R.S. § 40–607, in which the legislature had specified the regulations concerning granting of certificates to motor carriers, was unconstitutional. The argument of the Commission that it had plenary power to regulate public service corporations was rejected. We said:

"* * * the paramount power to make all rules and regulations governing public service corporations not specifically and expressly given to the

commission by some provision of the constitution, rests in the legislature and it may, therefore, either exercise such powers directly or delegate them to the commission on such terms and limitations as it thinks proper." 54 Ariz., at p. 176, 94 P.2d at p. 450.

And we said in Walker v. De Concini, 86 Ariz. 143, 341 P.2d 933, that:

"The Corporation Commission's jurisdiction is limited to those powers given it by the Constitution and the statutes of this state." 86 Ariz., at p. 150, 341 P.2d at p. 938.

Appellants, however, argue that the application requests certification to furnish steam; that steam is a form of water; and that, therefore, the application comes within § 40–281, supra, as a "water corporation." But Article 15, § 2 tacitly recognizes the difference between steam and water because it refers to "furnishing water for irrigation," etc., and "steam * * * for heating or cooling purposes." It is, accordingly, difficult to believe that the framers of the Constitution intended to convey any greater significance to the word "water" than that it was used in its ordinary and natural sense. Nor does the context in which the word "water" was used indicate that it was to have a meaning other than that of a fluid.

Appellants also seek to bring the application within the authority of the Commission

as a gas company which must be certificated under A.R.S. § 40–281. It is argued that Kallof applied for a certificate to furnish steam and that steam is a gas. By the Constitution, Article 15, § 2, those who furnish gas "for light, fuel or power" are public service corporations subject to regulation by the Commission. But, here again, the language of the Constitution taken in its normal context does not use steam and gas synonymously. The Constitution distinguishes between steam for heating or cooling and gas for light, fuel or power. Had there been an intention to include steam for light, fuel and power, the framers of the Constitution would undoubtedly have so specified. They recognized its use for heating but not for light, fuel or power.

Appellants finally argue that because Kallof's application in its first part seeks a certificate to furnish "hot or cold circulating chemicals, gases or *water* for heating or cooling purposes," the proposed activities are included as a "water corporation" within the language of A.R.S. § 40–281, supra. We think this also is an unreasonable enlargement on the meaning of the language used in Article 15, § 2, "furnishing water for irrigation, fire protection, or other public purposes." The word "furnish" is defined by Webster as "to provide or supply with what is needed, useful or desirable." Webster's Third New International Dictionary, Unabridged. It connotes a transfer of possession. There is, in Kallof's supplying water for heating or cooling purposes, no contemplated transfer of possession. The use of water is the same as the pipes that contain it—the means or conduit by which heat is supplied or furnished. Applicant would be furnishing heat, or possibly refrigeration, through the use of water. There is no transfer of the possession of the water but of the heat contained in it or, in the case of cold water, it is the vehicle by which heat is absorbed and carried away.

Water for "other public purposes" should be read in the light of the rule of *ejusdem generis* limiting the scope of general words after specific words. Alvord v. State Tax Commission, 69 Ariz. 287, 213 P.2d 363; White v. Moore, 46 Ariz. 48, 46 P.2d 1077. Had it been intended that the furnishing of water be for any public purpose, there would have been no need to have enumerated irrigation and fire protection. The phrase "other public purposes" must, accordingly, have been intended to restrict the purposes in some manner similar to those enumerated. The common thread is the supplying of water, the transfer of its possession, for consumption by the user. In this sense the applicant does not furnish water to anyone. The water he proposes to use for the entrapment of heat can be circulated and recirculated or it can be wasted at the applicant's will but in either event he is not a supplier of water within the apparent meaning of the Constitution.

. We conclude that neither the Constitution nor the statutes give the Corporation Commission the unlimited power to issue certificates of public convenience and necessity. There is no authority to certificate an individual or a corporation "in furnishing, for profit, hot or cold air or steam for heating or cooling purposes." Nor can the words "gas" and "water" as used in Article 15, § 2 be so strained and distorted out of their normal context as to embrace the proposed uses.

The judgment of the court below is ordered affirmed.

BERNSTEIN, V. C. J., and LOCK-WOOD, UDALL, and McFARLAND, JJ., concurring.