LAND, J.
 

 As the issues involved in the above cases are largely similar, they have been consolidated for the purposes of trial.
 

 On July 20, 1927, the town of Rayville, by Ordinance No. 144, granted a franchise to T. L. James for the distribution and sale of natural gas in the town, the rate to be charged for gas being fixed at 70 cents per 1,000 cubic feet to domestic consumers.-
 

 This franchise was acquired later by the Richland Gas Company, Inc., which commenced the sale and distribution of gas to the inhabitants of the town of Rayville, and is still engaged in that business.
 

 On August 28, 1928, by Ordinance No. 158, the town of RayviUe granted a similar franchise to J. A. Hale; and in this franchise the rate to be charged for gas is fixed at 35 cents per 1,000 cubic feet to domestic consumers. This franchise was sold and transferred to the Rayville Gas Company, Inc.
 

 On December 24, 1928, while the Rayville Gas Company was engaged in constructing a plant and laying pipes along the streets and alleys of the town of Rayville, for the purpose of furnishing gas to the inhabitants at a lower rate, the Richland Gas Company filed suit in the district court of Richland parish, attacking the validity of Ordinance No. 158 on various grounds, and alleging that, if the town of Rayville can lawfully grant an additional franchise, said ordinance cannot have effect nor be executed without the approval and authority of the Louisiana Public Service Commission, and that no such approval or authority has been granted or obtained by the Rayville Gas Company.
 

 
 *303
 
 In that suit, the Richland Gas Company obtained a temporary restraining order prohibiting the town of Rayville and the Rayville Gas Company “from laying pipe and continuing the construction, of a plant for the ostensible purpose of supplying gas to, and soliciting business from, and making contracts with, the inhabitants of the Town of Rayville for the sale of gas, or otherwise engaging or offering to engage in the public service of distributing and selling natural gas in said town in competition with petitioner,” the Richland Gas Company.
 

 On January 16, 1929, after a hearing on the rule for a preliminary injunction, the temporary restraining order issued in the case was set asidé, and the demands of the Richland Gas Company were rejected.
 

 A motion for new trial was overruled, and a devolutive appeal was taken to this court; bond being filed in the lower court January 22,1929.
 

 On May 24,1929, the Louisiana Public Service Commission promulgated order No. 606, reading in part as follows:
 

 “Ordered, that the Rayville Gas Company, Inc., its officers, agents and employees, and all persons associated or connected with it, be and they are hereby directed and required to cease and desist from vending, transmitting, supplying or delivering natural gas, as a public service, or from in any manner engaging in the business of vending, transmitting, supplying or delivering natural gas, as a public service, in the Town of Rayville, Louisiana, unless and until the said Rayville Gas Company, Inc., shall have first applied to and secured from the Louisiana Public Service Commission authority to so engage in vending, transmitting, supplying and delivering natural gas in the Town of Rayville, Louisiana.”
 

 In the case of Rayville Gas Co. v. Louisiana Public Service Commission, the gas company filed a petition in the district court of East Baton Rouge appealing from order No. 606, issued by the commission, and attacking same as ultra vires, null and void, unreasonable, oppressive, and wholly unauthorized hy any law of the state of Louisiana, constitutional or statutory.
 

 The Rayville Gas Company avers that the enforcement of said order will destroy its investment and will constitute the taking of its property withopt due process of law.
 

 Said company further avers that the commission is about to proceed against it for violating said order and will assess fines and penalties against it to such an extent as to prevent it from carrying on its business, and as to result in the confiscation of its property.
 

 Said company prays for judgment annulling said order, and perpetually enjoining the commission from enforcing same.
 

 The Louisiana Public Service Commission, in answer to the petition of the Rayville Gas Company, Inc., admits that the town of Ray-ville is a municipal corporation, but denies that said municipality has any right or authority in law to grant a franchise for the operation and conduct of a natural gas distributing system in the town of Rayville, as a public utility, until the grantee of such franchise shall have applied for and secured from the commission a proper certificate of convenience and necessity to engage in the business of a public utility.
 

 On July 3,1929, the rule nisi was made absolute, and a temporary injunction was issued by the district court of Bast Baton Rouge, restraining the Louisiana Public Service Commission from enforcing or attempting to enforce its order, No. 606, promulgated on May 24, 1929.
 

 On July 8, 1929, a devolutive appeal was
 
 *305
 
 taken from this judgment to this court by the commission and by the Richland Gas Company, the intervener.
 

 In the opinion of the commission, handed down on May 24,1929, and resulting in the issuance of order No. 606, it is said in part:
 

 “From the foregoing it will be seen that the reasonableness of the natural gas rates of neither petitioner nor respondent in the Town of Rayville is at issue.
 
 The only question to he decided is, at this time, as to whether the Rayville Gas Company, Ine., or any other person or persons, may engage in the business of a public utility unless and until authority to do so htis been sought and procured from this Commission after an appropriate investigation to determine whether or not the operartion of such utility is in the public interest.
 
 Manifestly, this Commission cannot prohibit the laying of pipes, mains and connections, or the construction of any of the physical elements of a natural gas plant, but the question of whether the owner of such physical properties may engage in the public distribution and sale of natural gas,
 
 in competition with an established plant,
 
 admittedly under the jurisdiction of this Commission, against whose service or rates no protest has been urged, is a most serious question, and, in the public interest, it must be definitely settled.”
 

 The town of Rayville is incorporated under Act No. 136 of 1898, as amended by Act No. 189 of 1920. Under the provisions of the original and of the amendatory act, a municipality has the right to grant the use of its streets, alleys, and public places for the laying of pipes for the purpose of serving its inhabitants with gas. It is expressly provided in these acts that “a franchise, right of way, or privilege of any character whatever, shall not be granted for a longer period than twenty-five years,
 
 and such privilege shall not be exclusive.”
 
 Act No. 189 of 1920, § 15, par. 8, p. 312.
 

 At its last regular session in the year 1928 the Legislature again authorized and empowered the governing authorities of municipal corporations, with a population not exceeding 25,000, to grant franchises to any person, firm, or corporation to use and occupy the streets, alleys, and public places therein “for pipelines, mains for gas transportation and distribution system and appurtenances.” It is: expressly provided. in this act: “ * * * But such franchises, rights and privileges
 
 shall not be exclusive,
 
 nor be for a longer period than twenty-five (25) years and shall be subject to such terms, conditions and stipulations as may or shall be prescribed by the Governing Authorities of said municipalities.”' Act No. 76 of 1928.
 

 At its last regular session in the year 1928 the Legislature also passed Act No. 80 to confirm and validate all franchises theretofore granted by the governing authorities of municipal corporations (cities of more than 75,-000 population excepted) to any person, firm, or corporation to use the streets, alleys, and public places of said municipalities “for the purpose of constructing, maintaining and operating * * * pipe-lines and" mains for gas transportation and distribution systems and appurtenances.” Act No. 80 of 1928.
 

 As the “Railroad Commission” and as the “Public Service Commission,” this commission has been in existence since the year 1898, and from that date to the present time the fixed public policy of the state has been that gas franchises granted by the municipalities of the state
 
 shall not be exclusive.
 

 The power to grant gas franchises has been vested by the Legislature in the municipalities of the state, and not in the Louisiana Public Service Commission. The power to confirm and validate such franchises has been exercised directly by the Legislature in the recent enactment of Act No. 80 of 1928.
 

 The commission has the power to super
 
 *307
 
 vise and regulate public utilities as it finds them. It has nothing to do with creating or bringing them into existence. That is a matter for other branches of the government. Orr v. La. Highway Com., 159 La. 930, 106 So. 384; N. O. Pont. Bridge Co. v. La. Pub. Service Com., 162 La. 874, 111 So. 265.
 

 There is no law of this state requiring the grantee of a municipal franchise to secure from the commission a certificate of public convenience or necessity before engaging in the business provided for by the franchise.
 

 “The commission possesses no other power than that conferred upon it.by the law of its creation, and under that law it has at the utmost only the power that is conferred in express terms or by necessary or fair implication.” Western Union Telegraph Co. v. Railroad Commission of Louisiana, 120 La. 761, 45 So. 598, 599.
 

 The Louisiana Public Service Commission is created by section 3 of article 6 of the Constitution of 1921, and its powers are set forth in section 4 of the same article as follows:
 

 “Section 4. The Commission shall have and exercise all necessary power and authority to supervise, govern, regulate and control all common carrier railroads, street railroads, interurban railroads, steamboats and other water craft, sleeping car, express, telephone, telegraph, gas, electric light, heat and power, water works, common carrier pipe lines, canals, (except irrigation canals) and other public utilities in the State of Louisiana, and to fix reasonable and just singlé and joint line rates, fares, tolls or charges for the commodities furnished, or services rendered by such common carriers or public utilities, except as herein otherwise provided.
 

 “The power, authority, and duties of the Commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by the common carriers and public utilities hereby, or which may hereafter be made subject to supervision, regulation and control by the Commission. The right of the Legislature to place other public utilities under the control of and confer other powers upon the Louisiana Public Service Commission respecting common carriers and public utilities is hereby declared to be unlimited by any provision of this Constitution.
 

 “The said Commission shall have power to adopt and enforce'such reasonable rules, regulations, and modes of procedure as it may deem proper for the discharge of its duties, and it may summon and * * * compel the production of books and papers, take testimony under commission, and punish for contempt as fully as is provided by law for the district courts.”
 

 The Supreme Court of the United States, in the case of Stone et al. v. Farmers’ Loan & Trust Co., 116 U. S. 307, on page 331, 6 S. Ct. 334, 345, 388, 1191, 29 L. Ed. 636, says: “From what has thus been said, it is not to be inferred that this power of limitation or regulation is itself without limit. This power to regulate is not a power to destroy, and limitation is not the equivalent of confiscation.”
 

 The jurisdiction of the Arkansas' Railroad Commission extends to and includes “all matters pertaining to the regulation and operation of: (a) all common carriers.”
 

 Under the power delegated, the Arkansas Railroad Commission promulgated the following general rule: “No person or motor transportation company shall begin to operate any motor propelled vehicle for the transportation of persons or property or both for compensation between fixed termini or over a regular or irregular route in this State without first obtaining from the Railroad Commission a certificate declaring that public convenience and necessity require such operation.”
 

 
 *309
 
 After issuing the required certificates to two concerns to operate a motor bus line over certain public highways in Union and Oua-chita counties, Ark., the commission refused a similar certificate to the Independent Bus Line. The applicant challenged the authority of the commission to promulgate such rule or to deny to it the privilege of operating motor bus lines over the highways in question.
 

 The Supreme Court of Arkansas in the case mentioned, Arkansas R. Commission v. Independent Bus Lines, 172 Ark. 3, 285 S. W. 388, 390, said in part: “It follows, then, that if such authority exists in the Railroad Commission, it is by necessary implication from language used in the statute. The language is not broad enough to justify the implication. ‘Regulation and operation’ does not import the right of denial or the right to grant an exclusive franchise or permit which, in effect, involves a denial to some. ‘Regulation’ is not synonymous with ‘prohibition,’ and a delegation of the authority by the Legislature to regulate does not imply authority to prohibit.”
 

 In Ex parte Patterson, 42 Tex. Cr. R. 256, 58 S. W. 1011, 1012, 51 L. R. A. 654, it is said: “The power to regulate does not properly include the power to suppress or prohibit, for the very essence of regulation is the existence of something to be regulated. * * * The power to regulate includes the power to restrain, so long as the restraint imposed is reasonable. The restraint must not so confine the exercise of any occupation as to amount to a prohibition.”
 

 “The term ‘regulate’ * * * ordinarily implies, not so much the establishment of a new thing, as the arrangement in proper order of such as already exists.” United States v. Harris, 26 Fed. Cas. 185, 192 [No. 15315],
 

 So, the terms “supervise, govern, and control” necessarily assume the existence and operation of some public utility, and “matters and things connected with, concerning,
 
 and growing out of the service
 
 to be given and rendered,” as expressly declared in section 4 of article 6 of the Constitution of 1921, in conferring upon the Louisiana Public Service Commission powers of supervision, regulation, and control respecting common carriers and public utilities of the state.
 

 If a public utility cannot operate as such without obtaining a certificate of public necessity or convenience, and if the commission has the power to withhold such certificate then it has the power to prohibit the operation of such utility and to confiscate its property. Such is not the law in this state.
 

 Besides, the commission, by refusing such certificate, would have the power to create a gas monopoly in the town of Rayville, contrary to the fixed public policy of the state, declaring that gas franchises shall not be exclusive.
 

 2. The Richland Gas Company contends:
 

 (a) That the town of Rayville was without power to grant a second franchise and fix rates therein for competitive public service other than those established in its prior franchise.
 

 ' (b) That the ordinance granting the second franchise impairs the obligation of the prior contract with plaintiff implied in its franchise.
 

 (c) That the town of Rayville is not large enough to support two gas companies. -
 

 As we have shown, the town of Rayville has the right under its charter, Act No. 136 of 1898, as amended, to grant gas franchises, and under the law cannot grant an exclusive franchise.
 

 It is well settled that: “On the grant of a franchise not in terms exclusive, there is no constitutional obligation on the state or municipality not to grant to another corporation
 
 *311
 
 a similar franchise, even though the latter greatly impairs or destroys the value of the former. * * * No franchise will be held exclusive unless the intention to grant an exclusive privilege clearly appears.” 12 C. J., Constitutional Law, art. 659, note 41; 12 R. C. L., Franchises, art. 23, note 12; Rushville v. Rushville Natural Gas Co., 132 Ind. 575, 28 N. E. 853, 15 L. R. A. 321; Crouch v. City of McKinney, 47 Tex. Civ. App. 54, 104 S. W. 518.
 

 “Exclusive rights to public franchises are not favored. They must be specially provided for.” Wright v. Nagle, 101 U. S. 791, 25 L. Ed. 921.
 

 As to the impairment of the contract implied in the first franchise granted to the Richland Gas Company by the granting of a second franchise to the Rayville Gas Company, it is well settled that: “If a State grant no exclusive privileges to one company which it has incorporated, it impairs no contract by incorporating a second one which itself largely manages and profits by to the injury of the first.” Washington & Baltimore Turnpike Co. v. State of Maryland, 3 Wall. (70 U. S.) 210, 18 L. Ed. 180; High on Injunctions, 902; Rockland Water Co. v. Camden & Rockland Water Co., 80 Me. 544, 15 A. 785, 1 L. R. A. 388; 12 C. J., Constitutional Law, art. 699.
 

 Judgments affirmed.