412 So.2d 1069 (1982)
SOUTH CENTRAL BELL TELEPHONE COMPANY
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 81-CA-2997.
Supreme Court of Louisiana.
April 5, 1982.
*1070 M. Robert Sutherland, Herschel L. Abbott, Jr., of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for plaintiff-appellee.
Marshall B. Brinkley, Michael R. Fontham, of Stone, Pigman, Walther, Wittman & Hutchinson, New Orleans, for defendant-appellant.
CALOGERO, Justice.
The Louisiana Public Service Commission appeals from a decision of the Nineteenth Judicial District Court which held that South Central Bell Telephone Company did not have to pay a fee of the Commission's special counsel. The slightly over twenty thousand dollar fee is for services performed by the Commission's special counsel in connection with the Commission's intervention in an appeal on the side of those challenging a decision of the Federal Communication Commission in Computer and Communications Industry Association v. Federal Communications Commission and the United States of America, No. 80-1471 (D.C.Cir.1980) (Known as "Computer II," or "Second Computer Inquiry).[1] Computer II had come to the attention of the Commission's special counsel in the course of the Commission's examining an application for a rate increase filed by South Central Bell. After the fee for intervening in the appeal of Computer II was certified to South Central Bell "in connection with [its] rate application," the telephone company filed a rule in the district court to test the right of the Commission to charge them that item. The Commission argued that Computer II was a "rate making" case under La.R.S. 45:1180.[2] There was no dispute as to the reasonableness of the fee itself; the dispute was over whether South Central Bell should be made to pay the expense incurred by the Commission in its intervention in the Computer II appeal.
After a hearing, the district court concluded that while the outgrowth of the Computer II decision might arguably at some later point affect rates of Louisiana telephone subscribers it was not a case for which the certification of the Commission's special counsel fees to the utility was authorized under La.R.S. 45:1180 et seq. The district court thus entered judgment for South Central Bell and against the Commission.
On appeal, the Commission argues that the certification of fees to South Central Bell is authorized under the Commission's plenary authority granted to it in the La. Const. of 1974, art. IV § 21 as well as under R.S. 45:1180 et seq. We find neither constitutional nor statutory authority for the Commission's certification for payment to South Central Bell of the fee for special counsel to intervene in Computer II on behalf of Louisiana consumers.[3]
The factual background of this case is as follows:
On May 19, 1980, South Central Bell filed with the Commission an application for an increase of its intrastate rates and charges for telephone service in the gross amount of *1071 $183,062,000. The Commission hired special counsel to review and evaluate the application.[4] On January 21, 1981, the Commission issued its order on South Central Bell's application.[5] The minutes of its meeting of April 22, 1981, some three months after issuance of Order No. U-14673, reveal that the Commission "authorized the employment of [counsel] to intervene on behalf of the Commission in FCC proceedings involving the telephone industry, particularly in regard to deregulation of certain aspects of terminal equipment and the depreciation and separations manual ... with the fees of Special Counsel ... to be assessed to ... South Central Bell ...." The Commission moved to intervene in May of 1981 in Computer II, on appeal in the United States Court of Appeal, D.C. Circuit. On July 23, 1981, special counsel's bill for legal services was tendered to South Central Bell. A narrative was annexed detailing the activities of special counsel in connection with the Commission's intervention in the Computer II appeal.
In response to a rule protesting the charges which South Central Bell filed pursuant to La.R.S. 45:1181, the district court found the charges not proper since the court believed that the Computer II inquiry was not a rate making case or the judicial review thereof.
The Commission appeals that decision arguing that it "unduly circumscribes the constitutional power of the Commission, runs counter to the plain meaning of an applicable statute and unjustifiably substitutes the court's interpretation of the nature of the federal proceeding for that of the Commission."

THE CONSTITUTIONAL QUESTION
The powers and duties of the Louisiana Public Service Commission first appeared in the 1921 Louisiana Constitution as Art. VI § 4. Amended in 1964,[6] the provision reads:
The Commission shall have and exercise all necessary power and authority to supervise, govern, regulate and control all common carrier railroads, street railroads, interurban railroads, steamboats and other water craft, sleeping car, express, telephone, telegraph, gas, electric, light, heat and power, water works, common carrier pipelines, canals (except irrigation canals) and other public utilities in the State of Louisiana, and to fix reasonable and just single and joint line rates, fares, tolls or *1072 charges for the commodities furnished, or services rendered by such common carriers or public utilities, except as herein otherwise provided; ...
The power, authority, and duties of the Commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by the common carriers and public utilities hereby, or which may hereafter be made subject to supervision, regulation and control by the Commission, ... The right of the Legislature to place other public utilities under the control of and confer other powers upon the Louisiana Public Service Commission respecting common carriers and public utilities is hereby declared to be unlimited by any provision of this Constitution.
The said Commission shall have power to adopt and enforce such reasonable rules, regulations, and modes of procedure as it may deem proper for the discharge of its duties, and it may summon and compel the attendance of witnesses, swear witnesses, compel the production of books and papers, take testimony under commission, and punish for contempt as fully as is provided by law for the district courts.
The 1974 Constitution streamlined the language of the provision but essentially afforded the Louisiana Public Service Commission the same powers and duties which it had under the former constitution. La. Const. art. IV § 21(B) provides:
The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.
So, under each constitutional provision, the Public Service Commission had the power and authority to regulate the common carriers and public utilities of this state and to accomplish that end, it could adopt and enforce reasonable rules regulations and procedures.
While the language in the 1974 Constitution is different from that in the 1921 Constitution, there was no intention on the part of the delegates to the 1973 Constitutional Convention, nor on the part of the citizens of the state who voted to adopt the 1974 Constitution to change the authority of the Public Service Commission. Delegate Louis Lambert reported to the Convention that "the committee worked hard ... not to make any substantive change basically in that provision. The reasons for that was that apparently it had worked fairly well in the past. We didn't see any particular reason to tamper with it." Volume IX. Records of the Louisiana Constitutional Convention of 1973 at 3008. Later in the discussion immediately preceding final adoption of the provision, delegate Pat Juneau reiterated the intent to "not make any change whatsoever in the present authority and jurisdiction of the Public Service Commission." Supra at 3347. Particularly is this likely as relates to the Public Service Commission's authority to bill the regulated utility for special counsel fees, considering that the Convention debated the Public Service Commission's constitutional authority only six months after this Court rendered its decision in United Gas Pipe Line Company v. Louisiana Public Service Commission, 279 So.2d 195 (La.1973). In United Gas, we declared that absent express statutory authority, the Commission did not have the power to assess to the utility the fees of special counsel whose services for the Commission were those "normally performed by a lawyer, services which had they not been performed by Mr. Berkeley would likely have been performed by the Commission's regular counsel." 279 So.2d at 198.
In any event, the question is two fold:
(1) Does the constitutional power and duty to regulate all common carriers and public utilities include the right to charge the utility the Commission's counsel fees?
(2) Does the constitutional directive that the Commission adopt and enforce reasonable rules, regulations and procedures necessary for the discharge of its duties empower *1073 the Commission by instituting such rules, regulations, or procedures to charge the regulated utility the Commission's counsel fees?[7]
Our answer to each of the foregoing questions is in the negative.
The express language of the 1974 Louisiana Constitution reasonably interpreted does not allow the charging of the Commission's expenses for special counsel to the utility under its regulatory power. In Richland Gas Co. v. Hale, 169 La. 300 at 307, 125 So. 130 at 133, it was noted:
The commission possesses no other power than that conferred upon it by the law of its creation, and under that law it has at the utmost only the power that is conferred in express terms or by necessary or fair implication. Western Union Telegraph Co. v. Railroad Commission of Louisiana, 120 La. [758] 761, 45 So. 598, 599.
Additionally the historical development of the Commission up to the adoption of the 1974 Constitution reveals a lack of fee assessing authority, except for those instances which were expressly provided for by the legislature. Over the years, there have been complaints that the Commission was not sufficiently staffed to meet the demands of its regulatory activities. See generally: W. M. Barrow, Report to the Attorney General, 31 (August 15, 1921); Nat B. Knight, Jr., The Louisiana Public Service Commission, 16 Tul.L.Rev. 1 (1941). In turn, the legislature has responded to the financial problems of the Commission. See e.g. La.R.S. 45:1177, La.R.S. 45:1180, La. R.S. 45:1181, La.R.S. 45:1197. However, nowhere during its history, nor that of its predecessor the Railroad Commission of Louisiana has the Commission been given or exercised an independent constitutional power to fund its activities.
A review of the constitutional and statutory provisions relating to the Commission's fee imposing authority is revealing. The 1898 and 1913 Louisiana Constitutions contained provisions concerning the Railroad Commission of Louisiana. Besides conferring on the legislature the power to enlarge the powers and duties of the Commission, and providing for "clerical or other assistance... deemed necessary for the discharge of [its] duties," the constitution also allowed the Attorney General and district attorneys to aid the Commission in legal matters for a percentage not to exceed 25% of all fines and forfeitures collected, or to hire other attorneys under similar terms. La.Const. § 288 (1913).
In the 1921 Constitution, the Public Service Commission was required to appoint a Secretary and fix his salary, but also could appoint other employees should the legislature so provide. Additionally, the commissioners, their attorneys and employees received actual travelling expenses when travelling on the Commission's business. La.Const. art. VI § 3 (1921). Furthermore the 1921 Constitution declared the right of the legislature to "confer other powers upon the Louisiana Public Service respecting common carriers and public utilities ... to be unlimited by any provision of th[e] Constitution." (La.Const. art. VI § 4 (1921)). Apparently it was this constitutional power delegated to the legislature which was utilized to pass Act 171 in 1962 which allowed the Commission to hire its own lawyer and to pay such counsel from the fees generated by the Commission. La. R.S. 45:1177 as amended, appears to be the statutory counterpart to the 1913 constitutional provision which had provided for the using the Attorney General, district attorneys or specially employed attorneys as legal counsel for the Commission.
Additionally, the Commission was given the power under La.R.S. 45:1180 to pass on the expenses for "engineers, consultants, accountants or clerical assistants" incurred by the Commission in the investigation of the affairs of a public utility "for the purpose of fixing and regulating the rates charged". When that statute was interpreted *1074 in United Gas, however, we found that it did not allow the certification of fees for additional counsel hired to perform typically legal work during the Commission's investigation of a utility. The United Gas decision may have prompted the Legislature in 1975 to amend La.R.S. 45:1180 to allow the Commission to retain "[a]ttorneys or special counsel ... for the purpose of evaluating and reviewing proposed rate increases, and for representing the Public Service Commission in rate making cases or the judicial review thereof." The full implications of the statutory law on this case will be explored in the next part of the opinion. For purposes of this discussion of the constitutional provisions, it is sufficient to say that the historical development of the law does not support the position of the Commission.
Nor can the power to assess counsel fees for the Commission's intervention into the Computer II appeal to South Central Bell be supported by relying on the rule-making powers of the Commission. The Commission's reference to Louisiana Consumer's League, Inc. v. Louisiana Public Service Commission, 351 So.2d 128 (La.1977) and a Colorado case, Mountain States Telephone & Telegraph Co. v. Public Utilities Commission, 195 Colo. 130, 576 P.2d 544 (1978) is not helpful to their position since neither bear significantly upon the issue here. The Louisiana Consumers' League involved a procedural question, and while the court found that the Commission did not have to follow the procedures set forth in the Administrative Procedures Act, it did not determine that the Commission had unfettered discretion nor autonomous powers as relates to funding. Article IV, § 21(B) of the 1974 Constitution required that the Commission enact "reasonable" rules and the Court struck down the Commission's rule that barred intervention by the Louisiana Consumers League as being unreasonable. The case of Mountain States Telephone & Telegraph Co. involved litigation arising out of a telephone rate making proceeding before the Colorado Public Utilities Commission, a situation unlike the Computer II inquiry. Furthermore the Colorado Supreme Court was interpreting a provision of the Colorado Constitution different from the provisions of our Louisiana Constitution. Finally the court in Mountain States determined that there was statutory authority for the award as well. 576 P.2d at 547. Were we to find statutory authority for the Commission's certification of the counsel fee in Computer II to the utility, we too would be able to affirm the award in this case.

STATUTORY AUTHORITY
Alternatively, the Commission contends that R.S. 45:1180 facilitates their charging the special counsel fees to the utility. Prior to 1976, only two statutes addressed attorney's fees in regard to the Louisiana Public Service Commission. La. R.S. 45:1177 provides for the Commission's retaining an attorney whose salary and expenses are to be derived from the fees collected by the Commission. La.R.S. 45:1198 provides for the payment of attorney's fees in suits for damages when a commission's order has been violated.
In 1976, apparently in response to the United Gas decision, the legislature added the following paragraph to La.R.S. 45:1180:
Attorneys or special counsel may be retained by the commission for the purpose of evaluating and reviewing proposed rate increases, and for representing the Public Service Commission in rate making cases or the judicial review thereof.
Under the express provisions of this statute and under amended La.R.S. 45:1181 to which the words "attorneys or special counsel" were added in 1976, counsel may be retained and the fees certified (1) to evaluate and review proposed rate increases, and (2) to represent the Public Service Commission in rate making cases or the judicial review thereof.
The Commission cites numerous cases where the Commission's special counsel fees for the examination of a utility's affairs and for rate making proceedings have been certified to the applicable utility without *1075 question or incident. However, the common thread linking the cases (other than the assessment of fees against the utility) is that in each instance the utility to which the fee was certified was a party and the appearance directly involved rate making matters. Monochem, Inc. v. Louisiana Public Service Commission, 253 La. 1047, 221 So.2d 504 (1969); South Central Bell Telephone Co. v. Louisiana Public Service Commission, 352 So.2d 964 (La.1977); South Central Bell Telephone Company v. Louisiana Public Service Commission, 352 So.2d 999 (La.1977). In Computer II, South Central Bell's involvement was only peripheral and its rates at that point were only indirectly and prospectively affected.[8] Furthermore, a decision had been rendered by the Commission on South Central Bell's rate application (i.e., in a rate making case) three months before the Commission's intervention in Computer II, and testimony on the rule in the district court revealed that the unresolved depreciation question was unrelated to the Computer II inquiry. The intervention did not involve an evaluation or review of proposed rate increases, did not concern Public Service Commission's involvement in a rate making case, or in the judicial review of a rate making case.
The Commission argues that Computer II was indeed a "rate making" case, within the meaning of La.R.S. 45:1180. However, it is clear from the record of the proceedings[9] and from the testimony at trial that Computer II did not set any rates, either intrastate or interstate.
The judicial history and the statutory language of La.R.S. 45:1180 and its amendment do not support the suggestion that the Commission has the right to charge the expense of its intervention in a case heard before the United States District of Columbia Circuit Court of Appeals to a local, only indirectly involved utility because the Commission believes that the outcome of such proceedings will affect the rates of Louisiana consumers. Admittedly Louisiana may have a public interest in such proceedings and there is no question but that the Public Service Commission's involvement in Computer II is in the interest of the Louisiana consumer. However, if the legislature has not adequately provided for the funding of the Commission to allow it to carry out scrupulously its responsibilities in the public interest, it is for the legislature to remedy the matter. The statutes do not direct that the utilities pay for special counsel fees which are not "for the purpose of evaluating and reviewing proposed rate increases and for representing the Public Service Commission in rate making cases or judicial review thereof."

JUDICIAL REVIEW OF THE COMMISSION'S BILLING SOUTH CENTRAL BELL
As a final argument, the Commission challenges the power of this Court to *1076 decide independently the meaning of the phrase "rate making case." They call to our attention two cases wherein the court deferred to the expert judgment of the Commission. The deference afforded the Commission in both cases, however, was to the Commission's expertise in issuing orders actually fixing rates. At issue in Monochem Inc. v. Louisiana Public Service Commission, 253 La. 1047, 221 So.2d 504 (1969) was a monthly charge for foreign exchange telephone circuits. The lower court had declared the $75 fee invalid. In South Central Bell Telephone Co. v. Louisiana Public Service Commission, 352 So.2d 964 (La. 1977), the lower court had amended an order of the Commission and ordered a rate increase. Certainly the orders and findings of the Commission in rate applications are entitled to great weight and should not be overturned on judicial review unless shown to be arbitrary, capricious or an abuse of the Commission's authority. Louisiana Power & Light Co. v. Louisiana Public Service Commission, 392 So.2d 658 (La.1980); Beauregard Elec. Co-op Inc. v. Louisiana Public Service Commission, 378 So.2d 404 (La.1979); Central Louisiana Elec. Co., Inc. v. Louisiana Public Service Commission, 377 So.2d 1188 (La.1979).
There is a distinction between the Commission's issuing and interpreting its own general orders and the Commission's interpreting the language of a statute passed by the legislature. As noted in Central Louisiana Electric Company, Inc. v. Louisiana Public Service Commission, 370 So.2d 497 (La.1979):
The Commission is an expert within its own specialized fields and its interpretation and application of its own General Orders, as distinguished from legislative statutes and judicial decisions, deserve great weight, because the Commission is in the best position to apply its own General Orders.
The question of whether the Commission is given the power to certify particular special counsel fees under the language of La. R.S. 45:1180 is clearly one of statutory interpretation. The remedy for challenging such certification is the filing of a rule pursuant to La.R.S. 45:1181. South Central Bell filed a rule so challenging the certification. The matter is properly before this court and subject to judicial review.

Decree
Finding that the Commission lacked the authority to certify the legal fees for its intervention into the Computer II inquiry to South Central Bell, we affirm the judgment of the district court in favor of South Central Bell and against the Louisiana Public Service Commission.
AFFIRMED.
DIXON, C. J., dissents with reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The 1921 Constitutional provisions cited by the majority gave the Public Service Commission the power to employ special counsel and charge the affected utility:
"The power, authority, and duties of the Commission shall affect and include all matters and things connected with, concerning, and growing out of the service to be given or rendered by the ... public utilities hereby, or which may hereafter be made subject to supervision, regulation and control by the Commission....
. . . . .
The said Commission shall have power to adopt and enforce such reasonable rules... as it may deem proper ..." Art. 6, § 4 La.Const. 1921.
United Gas Pipe Line Co. v. Louisiana Public Service Commission, 279 So.2d 195 (La.1973) dismissed this constitutional article as irrelevant, and narrowly construed the applicable statutes. Three members of this court disagreed with the opinion at that time. In my view, unless the 1974 Constitution is interpreted to narrow and restrict the powers of the Public Service Commission, the United Gas case should be overruled, and we should approve the action of the Commission in assessing fees for special counsel in the "Computer II" intervention against South Central Bell.
NOTES
[1] Computer II, a rule making inquiry, explored the effect of increased competition from unregulated industries in the field of data processing and computer services involving telecommunications equipment and the procedures by which to implement in the public interest the deregulation of the sale of terminal equipment and enhanced (such as long distance) services.
[2] La.R.S. 45:1180 provides in pertinent part:

Attorneys or special counsel may be retained by the commission for the purpose of evaluating and reviewing proposed rate increases, and for representing the Public Service Commission in rate making cases or the judicial review thereof.
[3] Neither party argues, nor do we find, that the Commission did not have the authority to intervene in Computer II on behalf of Louisiana consumers. The dispute centers on who should pay for such intervention. An amicus curiae brief filed by the Louisiana Consumer's League, Inc. argues that if the utility is not held responsible for the fee, the Commission might be unable to intervene in cases like Computer II, since there is no alternate means of funding.
[4] Hearings were conducted on November 12, 13, 17, 18 and 19, 1980, and December 8 and 9, 1980. In reviewing the application, the Commission addressed the following issues: (1) evidence suggesting a strategy of selective curtailment of service; (2) the proper disposition of the rate increase request; (3) proposed restructuring and repricing private line services (4) special issues having a potential impact on future rate levels, including (a) proposed changes in depreciation rates (b) negotiations aimed at developing uniform methods of separating the interstate and intrastate plant of the company and (c) proposed implementation of South Central Bell's so-called "market pricing process" for certain services.
[5] Order No. U-14673 directed South Central Bell (1) to take various detailed steps to provide full service, (2) to increase its tariffs in amounts directed by the Commission sufficient to increase its gross annual revenues by $52,408,000, (3) to restructure and reprice its private line services subject to stated modifications, but otherwise consistent with the company's proposal. No action was taken on several special issues presented but the following activities were suggested. The Commission directed that special counsel and the consultants of the Commission develop data and positions to be presented at public hearings to be held prior to the usual "three way meetings" between the company, federal regulatory officials and state regulatory officials to negotiate changes in depreciation. Special counsel and consultants were advised to participate in a study then being conducted by a joint board of the National Association of Regulatory Utility Commissioners and the Federal Communications Commission to develop a uniform method of dealing with separations. Finally, although the presented request for a market pricing process was rejected, special counsel and consultants for the Commission were directed, should South Central Bell again request adoption of the "market pricing process," to review and analyze that request.
[6] The portions of the article which we delete for ease of review both have to do with the 1964 amendment which gave to the legislature the exclusive power to regulate the direct sales of natural gas to industrial users for fuel or for utilization in any manufacturing process.
[7] Incidentally, no such rules have been adopted by the Commission, nor, given the outcome of this case, would the adoption of such rules allow the Commission to assess the utility the fees for intervention in the Computer II appeal.
[8] South Central Bell was not a party to Computer II although American Telephone and Telegraph and other utilities throughout the country petitioned the FCC for reconsideration of its decision and intervened in the appeal.
[9] The Computer II appeal arose out of a federal rule making proceeding of the Federal Communications Commission in the D.C. Circuit. The Final Decision, 77 F.C.C.2d 384, (Released May 2, 1980) contained the following summary of the proceeding:

Under consideration are issues addressed in the Notice of Inquiry and Proposed Rulemaking (Notice), 61 FCC 2d 103 Supplemental Notice of Inquiry and Enlargement of Proposed Rulemaking (Supplemental Inquiry and Rulemaking (Tentative Decision), 72 FCC 2d 358 adopted in this proceeding. Commonly referred to as the "Second Computer Inquiry," this proceeding focuses on regulatory issues emanating from the greater utilization of computer processing technology and its varied market applications. The thrust of this proceeding is threefold: a) to determine whether enhanced services which are provided over common carrier telecommunication facilities should be subject to regulation and, if so, to what extent, b) to examine the competitive and technological evolution of customer premises equipment, with a view toward determining whether the continuation of traditional regulation of terminal equipment is in the public interest; and c) to determine, consistent with the statutory mandate set forth in the Communications Act of 1924, as amended, 47 U.S.C. § 15, the role of communication common carriers in the provision of enhanced services and customer-premises equipment.