553 So.2d 435 (1989)
Channing HAYDEN, Jr., et al.
v.
LOUISIANA PUBLIC SERVICE COMMISSION and the State of Louisiana.
No. 89-CA-1283.
Supreme Court of Louisiana.
December 11, 1989.
*436 Richard S. Eustis, Louis S. Quinn, Charles Nunmaker, Monroe & Lemann, New Orleans, Walter H. Drake, Jr., Chalmette, Charles H. Junek, III, Violet, Louis Stierwald, Jr., Kenneth M. Wright, Lake Charles, for intervenors-appellants.
Edward S. Bagley, Terriberry, Carroll & Yancey, New Orleans, for plaintiff-appellee.
Marshall B. Brinkley, Robert L. Rieger, Jr., Baton Rouge, for defendant-appellee.
William J. Guste, Jr., Atty. Gen., Jesse James Marks, Chief, Robert A. Barnett, Asst. Atty. Gen., for defendant-appellant.
COLE, Justice.
In this case we are asked to decide whether certain sections of a statute governing pilotage fee commissions are an unconstitutional infringement on the power of the Louisiana Public Service Commission to adopt its own rules, regulations, and procedures and whether one section of the statute violates due process. We find the statute constitutional.

BACKGROUND
Beginning in 1837, the legislature first imposed regulations on the pilots who navigated ships through the entrances of the Mississippi River. In response to this legislation, the pilots in different areas formed pilots' associations to promote high standards among the members. Prior to 1968, the legislature set the fees and rates that could be charged by these associations. By La. Act 579 of 1968 (La.R.S. 34:1121-1127) the legislature created pilotage fee commissions for each pilots' association and gave these commissions the power to set fees and rates. The fee commissions consisted of an equal number of representatives of the steamship industry and the pilots' association. The Louisiana Public Service Commission (LPSC) served as a member of each fee commission in the event the industry *437 and pilot commissioners became deadlocked and could not resolve rate disputes. Commissioners from either side were allowed to certify any proper issue to the LPSC for adjudication when they could not agree. The decision of the LPSC would then constitute the decision of the fee commission. See Hayden v. Louisiana Public Service Commission, 512 So.2d 370 (La.1987); Hendrix v. Louisiana Public Service Commission, 262 La. 420, 263 So.2d 343 (1972).
By La. Act 202 of 1987, the legislature amended La.R.S. 34:1121-1122. The sections at issue in the present case are as follows:
La.R.S. 34:1122 B:
B. Pilotage fees and rates shall provide for all ordinary and necessary operating and administrative costs and expenses, including, but not limited to, the cost of, replacement of, and reasonable return on investment of pilot stations, administrative offices, furniture and fixtures, communication equipment and facilities, vessels, launches and other required vehicles of transportation and the expenses of maintaining and repairing same, other transportation expenses, the expense of maintaining necessary employees, operating materials, consumables and services, pensions, pension plans, hospitalization, disability compensation, taxes and licenses, life insurance, license insurance, trade promotions, public relations, legal expense, accounting expense, professional dues, administrative and professional publications, state pilot commissions, state and federal requirements, and fair average annual compensation for a state ship pilot, in comparison to regulated state ship pilotage in other United States ports.
La.R.S. 34:1122 D(2) & (3):
(2) Within ninety days following the certification of the issue to the Louisiana Public Service Commission, it shall hold hearings where interested members of the fee commission may file and present their evidence and arguments, at the same time, relative to the issue. The Louisiana Public Service Commission shall render a full and final decision relative to the issue prior to the lapse of twelve months from its receipt of certification of the issue.
(3)(a) If the dispute involves a proposed increase in fees and rates, the Louisiana Public Service Commission may permit the proposed increase to be put into effect, in whole or in part, pending its decision, subject to protective bonding and other security requirements set by it.
(b) If the dispute involves a proposed increase in fees and rates and the Louisiana Public Service Commission does not permit the proposed increase to be put into effect prior to its decision, the proposed increase shall nevertheless go into effect, and remain in effect unless and until it reaches a full and final decision disallowing the increase, immediately following the lapse of twelve months following its receipt of certification of the dispute if it has not rendered a decision by such time, subject however, to reasonable protective bonding and other security requirements set by it.
(c) If the dispute involves a proposed increase in fees and rates and such has been put into effect prior to full and final decision of the issue by the Louisiana Public Service Commission, and the full and final decision disallows the increase, in whole or in part, the increase which is disallowed shall be refunded in a manner as prescribed by the Louisiana Public Service Commission.

FACTS
On March 21, 1988, after the effective date of the amendment, the pilot members of the Crescent River Port Pilots Fee Commission certified a pilotage fee dispute to the LPSC pursuant to La.R.S. 34:1121-1122. The certification was docketed by the LPSC.
In April 1988, several industry commissioners of the Crescent River Port Pilots Fee Commission filed a petition in the district court for a temporary restraining order, declaratory judgment and injunctive relief against the LPSC and the State of Louisiana. The industry commissioners *438 sought to enjoin the LPSC from conducting any proceedings pursuant to the amended form of La.R.S. 34:1122 and further sought to have the statute declared unconstitutional. The pilot members of several other pilot fee commissions intervened into the proceedings.[1]
On May 3, 1988, the district court granted a temporary restraining order. The court rendered final judgment on February 2, 1989 declaring La.R.S. 34:1122 B and La.R.S. 34:1122 D(2) & (3) unconstitutional. The court found La.R.S. 34:1122 B and La.R.S. 34:1122 D(2) & (3) were impermissible restrictions on the LPSC's powers as set out in La.Const. Art. 4, § 21(B). In addition, the court found La.R.S. 34:1122 D(3) violated due process.
The LPSC, the State of Louisiana and the intervenors appealed directly to this court in accordance with La.Const. Art. 5, § 5(D)(1).

ANALYSIS
We begin from the well-settled premise that constitutional scrutiny favors the statute. Statutes are presumed to be valid, and the constitutionality of a statute should be upheld whenever possible. The party attacking the statute has the burden of showing the legislation is unconstitutional, and any doubt as to the legislation's constitutionality must be resolved in its favor. Board of Directors of the Louisiana Recovery District v. All Taxpayers, 529 So.2d 384 (La. 1988); State v. Griffin, 495 So.2d 1306 (La.1986); State v. Brenner, 486 So.2d 101 (La.1986); City of Lake Charles v. Henning, 414 So.2d 331 (La.1982).

Infringement on LPSC's Power to Adopt Rules, Regulations and Procedure
La.Const. Art. 4, § 21(B) defines the powers and duties of the LPSC:
(B) Powers and Duties. The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law.
The industry commissioners argue the statute usurps the LPSC's power to adopt its own rules, regulations and procedures. They point to the requirement that the LPSC hold a hearing within ninety days after certification and render a decision prior to the lapse of twelve months from certification (La.R.S. 34:1122 D(2)). They further object to the mandatory list of considerations used to determine fees in La. R.S. 34:1122 B.
In finding the statute unconstitutional, the district court relied heavily on this court's language in Louisiana Consumer's League, Inc. v. Louisiana Public Service Commission, 351 So.2d 128 (La. 1977). That case involved the issue of whether the Administrative Procedures Act (creating procedural limitations on the amendment of state agency rules) applied to the LPSC's amendment of its rule concerning intervention in utility rate proceedings. We held the Act did not apply:
Pursuant to La.Const. art. 4, § 21(B), the Commission "... shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties...." This constitutional grant of rule-making power to the Commission precludes the legislature from enacting statutes which would restrict the Commission's ability to adopt its own rules, regulations and procedures. Accordingly, the rule-making provisions of the Administrative Procedures Act are not applicable to the Commission.
351 So.2d at 131.
*439 We find Consumer's League is clearly distinguishable from the present case. Consumer's League dealt with the LPSC's powers in the context of its constitutionally mandated duty to regulate public utilities. By contrast, the LPSC's authority to regulate pilotage fees is not found in the constitution, but is "other regulatory authority" given to the LPSC by the legislature. Giallanza v. Louisiana Public Service Commission, 412 So.2d 1369 (La. 1982).
Under the scheme of La.Const. Art. 4, § 21(B), the legislature is allowed to contour this other regulatory authority "as provided by law." As was recently noted in Cajun Electric Power Cooperative, Inc. v. Louisiana Public Service Commission, 544 So.2d 362 (La.1989):
Art. IV, § 21(B), however, is unambiguous. It clearly states that the commission shall have jurisdiction over all common carriers and public utilities and have such other regulatory authority as provided by law. The cooperatives' contention that the phrase "as provided by law" modifies the commission's jurisdiction over common carriers and public utilities would result in a solecism. The adverbial phrase, "as provided by law," defines the conditions under which the commission shall have the "other regulatory authority" that the legislature may choose to grant.

544 So.2d at 363-64 (some emphasis added).
The argument of the industry commissioners essentially reads out the phrase "as provided by law." Under their interpretation, the legislature may grant the LPSC other regulatory authority but can go no further. We find such an interpretation runs counter to the clear language of Art. 4, § 21(B). By using the phrase "as provided by law," the drafters of the constitution intended to allow the legislature to frame its grant of "other regulatory authority" as it sees fit.
This conclusion is consistent with the last sentence of Art. 4, § 21(B), which authorizes the LPSC to adopt rules, regulations, and procedures necessary for the discharge of its duties. Obviously, if the legislature embodies rules, regulations or procedures in its grant of jurisdiction, it is unnecessary for the LPSC to address the subject.
Even in the context of public utilities and common carriers, this court has never interpreted the LPSC's control over its rules, regulations and procedures as unbridled. In Richland Gas Co. v. Hale, 169 La. 300, 125 So. 130 (1929), interpreting a provision under the 1921 Constitution similar to Art. 4, § 21(B), this court wrote:
The commission possesses no other power than that conferred upon it by the law of its creation, and under that law it has at utmost only the power that is conferred in express terms or by necessary or fair implication.
169 La. at 307, 125 So. at 133 (quoting Western Union Telegraph Co. v. Railroad Commission, 120 La. 758, 45 So. 598 (1908)).
This court has consistently reiterated this position. In Central Louisiana Electric Co. v. Louisiana Public Service Commission, 344 So.2d 1046, 1048 (La.1977), we noted as regards Art. 4, § 21, "the Legislature has plenary authority to enact any legislation not prohibited by the constitution."
South Central Bell Telephone Co. v. Louisiana Public Service Commission, 412 So.2d 1069 (La.1982), involved the issue of whether Art. 4, § 21(B) allowed the LPSC to adopt rules, regulations or procedures to charge the regulated utility for the LPSC's counsel fees. We found the constitution did not give the LPSC this power. Citing Consumer's League, we noted the case did not stand for the proposition that the LPSC had "unfettered discretion." 412 So.2d at 1074. Implicitly, we found the legislature had the power to enact statutes regarding the LPSC's recovery of counsel fees.
Therefore, we conclude the industry commissioners have failed to meet the heavy burden of showing La.R.S. 34:1122 B and La.R.S. 34:1122 D(2) & (3) are unconstitutional *440 violations of Art. 4, § 21(B).[2] We find these sections are valid exercises of the legislature's power to give the LPSC "such other regulatory authority as provided by law," and find the trial court erred in holding otherwise. We now turn to the issue of whether La.R.S. 34:1122 D(3) violates due process.

Due Process
We note at the outset that La.R.S. 34:1122 D(3) is strikingly similar to La. Const. Art. 4, § 21(D), dealing with public utilities:
(D) Applications, Petitions, and Schedules; protective Bond and Security.
(1) Within twenty days after a common carrier or public utility files a proposed rate schedule which would result in a change in rates, it shall give notice thereof by publication in the official state journal and in the official journal of each parish within the geographical area in which the schedule would become applicable.
(2) Within twelve months after the effective filing date, the commission shall render a full decision on each application, petition, and proposed rate schedule.
(3) After the effective filing date of any proposed schedule by a public utility which would result in a rate increase, the commission may permit the proposed schedule to be put into effect, in whole or in part, pending its decision on the application for rate increase and subject to protective bond or security approved by the commission. If no decision is rendered on the application within twelve months after such filing date, the proposed increase may be put into effect, but only if and as provided by law and subject to protective bond or security requirements, until final action by a court of last resort.
(4) If a proposed increase which has been put into effect is finally disallowed, in whole or in part, the utility shall make a full refund, with legal interest thereon, within the time and in the manner prescribed by law.
While not dispositive of the issue, we believe the fact that the legislature followed guidelines established in the constitution weighs in favor of La.R.S. 34:1122 D(3).
The industry commissioners argue that La.R.S. 34:1122 D(3) violates substantive and procedural due process by allowing automatic implementation of pilotage rate increases after the lapse of twelve months from the date of certification. They contend that such an automatic implementation without any form of hearing or determination is a denial of any "process" whatsoever.
In the area of substantive due process, courts look only to see if a particular legislative measure was a rational way to correct a problem. Williamson v. Lee Optical Co., 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1954). A legitimate and rational goal of price or rate regulation is the protection of consumer welfare. Pennell v. City of San Jose, 485 U.S. 1, 108 S.Ct. 849, 99 L.Ed.2d 1 (1988). Obviously, the state has a strong interest in protecting the welfare of its citizens by providing a system of adequate pilotage. Thus, we find the industry commissioner's substantive due process argument lacks merit.
In the area of procedural due process, courts have long held that the concept is flexible and depends upon the particular situation. Walters v. National Association of Radiation Survivors, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1984); Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1982); Bell v. Department of Health and Human Resources, 483 So.2d 945 (La.1986); Wilson v. City of New Orleans, 479 So.2d 891 (La.1985).
Determining the scope of due process protections requires consideration of several factors:

*441 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1975); Bell v. Department of Health and Human Resources, supra.

Applying these factors to La.R.S. 34:1122 D(3), we find no violation of due process. The private interest is that of the vessel owners who pay pilotage fees. Since these fees are already regulated, the impact of La.R.S. 34:1122 D(3)'s procedures does not appear that burdensome. We agree the vessel owners have an interest in not paying excessive fees, but we find this interest is offset by the low risk of an erroneous deprivation. The statute sets up security and bonding requirements for any increase implemented prior to a full and final decision by the LPSC. It further sets up a refund scheme for any increase ultimately disallowed by the LPSC. Considering these provisions, we find additional procedural safeguards would have little value. Finally, we believe the state's interest in safe pilotage on its waters is very high. Assuring adequate compensation for pilots is an important component of such an interest.
Weighing all these factors, we conclude La.R.S. 34:1122 D(3) does not violate due process. The district court erred in so holding.[3]

DECREE
For the reasons assigned, the judgment of the district court is reversed. The LPSC is ordered to proceed with the certification as docketed.
REVERSED.
LEMMON, J., concurs.
DENNIS, J., concurs with reasons.
DENNIS, Justice, concurring.
I respectfully concur.
Article 4, § 21(B) of the 1974 Louisiana Constitution provides that the Public Service Commission "shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law." The statutory scheme of the Pilot Fee Commission Act, La.R.S. 34:1121-1127, provides "other regulatory authority" under Art. 4, § 21(B) of the 1974 Louisiana Constitution to the Public Service Commission in cases in which the regular members of a pilot fee commission are unable to agree upon reasonable and just pilotage fees or any other legitimate business of the pilot fee commission. Giallanza v. LPSC, 412 So.2d 1369 (La.1982); see Hendrix v. LPSC, 262 La. 420, 263 So.2d 343 (1972). In essence, the statute provides that, in the absence of bargained pilot fees, the Public Service Commission shall regulate rates pursuant to its constitutional regulatory authority which is invoked for this purpose. Id.
The second sentence of Art. 4, § 21(B) of the 1974 Louisiana Constitution provides that the Public Service Commission "shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties, and shall have other powers and perform other duties as provided by law." This constitutional grant of rule-making power to the Commission precludes the legislature from enacting statutes which would restrict the Commission's ability to adopt its own reasonable rules, regulations, and procedures necessary to *442 the discharge of its duties. La. Consumer's League v. LPSC, 351 So.2d 128 (La. 1977); see also South Central Bell Tel. Co. v. LPSC, 412 So.2d 1069 (La.1982); Central La. Elec. Co. v. LPSC, 377 So.2d 1188 (La.1979).
I disagree with the rationale of the majority opinion insofar as it states that the legislature may attach conditions to the constitutional regulatory power of the Commission and in fact "contour" that constitutional power "as it sees fit." The first sentence of Art. 4, § 21(B) merely permits the legislature to invoke this constitutional regulatory power, not change it. Since the Commission's regulatory power is granted by the Constitution, the nature of this power cannot be altered, diminished or conditioned by the legislature. The legislature may grant the Commission authority to exercise its constitutional regulatory power over an industry affected with a public interest, but it cannot thereby change the essential nature of that power. See Cajun Elec. Power Coop. v. LPSC, 532 So.2d 1372, 1380 (La.1988) (Dennis, J., dissenting).
In my opinion, however, the statute may be upheld as constitutional as having been enacted pursuant to the second sentence of Art. 4, § 21(B). First, that provision empowers and mandates the Public Service Commission to adopt reasonable rules, regulations and procedures necessary for the discharge of its duties. Second, it authorizes the legislature to provide other powers and duties to the Commission. Third, it authorizes the Commission to receive these additional powers and to perform these additional duties. Consequently, the additional powers and duties assigned to the Commission by the legislature under the second sentence of Article 4, § 21(B) cannot conflict with or impinge upon the Commission's regulatory power granted by the Constitution or the reasonable rules, regulations and procedures it adopts necessary to its performance of these regulatory duties. On the other hand, the legislature may assign the Commission supplemental and complementary powers and duties if they do not thwart or interfere with the Commission's constitutionally granted powers or conflict with the reasonable and necessary rules, regulations and procedures it has adopted for the exercise of this power.
The statute in question does not impinge upon the Commission's constitutional regulatory power or conflict with a reasonable rule, regulation or procedure of the Commission necessary to its functions and duties. Consequently, at the time of the enactment of the statute there was no impediment to its passage by the legislature.
NOTES
[1] Initially, the intervenors argued that the industry commissioners had no right of action to question the constitutionality of the statute, since they were public officials sworn to uphold the constitution and laws of the state. The district court denied the intervenors' peremptory exceptions raising the objections of no cause of action, no right of action and lack of indispensible parties. The First Circuit Court of Appeal granted the intervenors' writ application, but the application was dismissed without the merits being decided when the parties reached an agreement. We find the exceptions were properly denied by the district court.
[2] We note that La.R.S. 34:1122 B contains many of the same considerations previously identified by this court as relevent in pilotage cases. See Hayden, supra; Giallanza, supra; Hendrix, supra. Accordingly, not only do we find that the legislature has the power to mandate the LPSC to consider these factors, but we find the failure of the LPSC to do so would result in an arbitrary and capricious decision.
[3] The written reasons of the district court implied that the statute may also violate due process because it is "void for vagueness." A law is vague for due process purposes when it fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited. Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). In the present case, there is no "prohibition." The statute merely places conditions on the exercise of the LPSC's jurisdiction in pilotage cases. Accordingly, we find the vagueness doctrine inapplicable.