Dear Representative Iles:
You have asked for a determination as to whether the Louisiana Public Service Commission (Commission) has the authority to adopt an order expanding the telemarketing exceptions of the "Telephone Solicitation Relief Act of 2001" (Acts 2001, No. 40). Specifically, the Commission has adopted a rule that adds calls made by any newspaper or periodical, qualified to be the official journal of the State, or any parish municipality, school board, or other political subdivision, to the list of exceptions set forth in LSA-R.S. 45:844.12(4).
The Telephone Solicitation Relief Act of 2001 (the Act), commonly referred to as the "Do Not Call' program, was adopted to protect the privacy of (telephonic) subscribers who wish to avoid unsolicited and unwanted telephonic solicitations. (LSA-R.S. 45:844.11 et seq.) The Act provides that the Commission must compile a database of telephone subscribers who wish to have their names included on a "Do Not Call" list and make that list available to telephonic solicitors. The Act defines a telephonic solicitation but list several precise exceptions to the definition. LSA-R.S. 45:844.12 (4) reads, in part:
 (4) "Telephonic solicitation" means any voice or data communication made . . . but does not include voice or data communications made for any of the following reasons:
 (a) In response to an express request of the person called.
 (b) Primarily in connection with an existing debt or contract payment . . .
 (c) To any person with whom the telephone solicitor has an existing relationship . . .
 (d) On behalf of an organization which has a nonprofit status under Section 501(c)(3) or (6) of the Internal Revenue Code
 (e) For the purpose of conducting marketing research, public opinion polling
(f) Constituting political activity.
The legislature directed the Commission to promulgate rules that would accomplish certain specifics by January 1, 2002 (LSA-R.S. 45:844.13C). The Commission was required to:
 (1) notify residential telephonic subscribers of the opportunity to participate in the do not call program;
 (2) specify the method by which consumers would notify the Commission of their wishes;
 (3) specify the length of time subscribers wished to participate and the effect of a change of telephone number;
 (4) specify the methods by which objections and revocations would be collected;
 (5) specify how solicitors could access the "Do Not Call" database;
In response to the legislative directive, the Commission published a Notice of rulemaking in their August 3, 2001 Official Bulletin. After receiving comments and considering regulation drafts, the Commission scheduled a vote on the proposed rules for the November 7th meeting. At that meeting, the Commission unanimously adopted an order accepting the draft rules governing the "Do Not Call" program. As adopted by the Commission, the rule excepting political activity from the definition of "telephonic solicitation" now reads:
 6. Constituting political activity. For the purposes of this Order, calls constituting political activity are defined as:
 (a) calls made for the sole purpose of urging support for or opposition to a political candidate or ballot issue; or calls made for the sole purpose of conducting political polls or soliciting the expression of opinions, ideas or voices; and,
 (b) calls made by any newspaper or periodical, qualified to be the official journal of the State or any parish, municipality, school board or other political subdivision as set forth in R.S. 43:140 et seq.
Clearly, the Commission's rule would except any newspaper solicitation, even those made to sell newspaper subscriptions, from the "Do Not Call' program.
The Louisiana Constitution, Article III, Section I (A) provides thatthe legislative power of the state is vested in the legislature. The Louisiana Civil Code, Article 2 further provides that legislation is asolemn expression of legislative will. In adopting the Telephone Solicitation Relief Act the legislature undoubtedly intended to limit the exemptions to the six that are listed in LSA-R.S. 45:844.12(4). On at least two occasions the legislature considered, and rejected, proposed amendments that would have added newspapers to the list of exceptions. On April 4, 2001, Representative Gillis Pinac proposed House Floor Amendment B-9 to HB 175, which would have added the exemption to the definition of telephonic seller for persons primarily soliciting the sale of newspaperof general circulation. The full house rejected that amendment by a vote of 81 to 12. On May 3, 2001, Senator Clo Fontenot offered the identical amendment on the Senate Floor where it was rejected by a vote of 23 to 12. The legislature unmistakably expressed their intention that telemarketing calls by newspapers would not be excepted from the definition of "telephonic solicitation" in the Act.
The powers of the Louisiana Public Service Commission are found in LSA-Const. Art. 4, Section 21(B). It reads:
 The commission shall regulate all common carriers and public utilities and have such other regulatory authority as provided by law. It shall adopt and enforce reasonable rules, regulations, and procedures necessary for the discharge of its duties as provided by law.
The Louisiana Supreme Court has addressed the rule-making authority of the Commission on more than one occasion. Two cases are particularly relevant to the issue at hand: Louisiana Consumers' League, Inc. vLouisiana Public Service Commission 351 So.2d 128 (1977) and Hayden v.Louisiana Public Service Commission 553 So.2d 435 (1989).
In Louisiana Consumers' League, Inc. v Louisiana Public ServiceCommission, the Louisiana Supreme Court was asked to review a Commission rule affecting the right of an organization to intervene in an electric power rate increase. The Louisiana Consumers' League challenged a Commission rule prohibiting intervention claiming that the Commission had not followed the Administrative Procedures Act when promulgating the rule. The Court held:
 This constitutional grant of rule-making power to the Commission precludes the legislature from enacting statutes that would restrict the Commission's ability to adopt its own rules, regulations, and procedures. Accordingly, the rule making, provisions of the Administrative Procedures Act are not applicable to the Commission. (Louisiana Consumer's League, Inc. at 130)
In 1989 The Louisiana Supreme Court revisited the issue of the Commission's rule-making authority in Hayden v. Louisiana Public ServiceCommission. This case involved the authority of the Commission to issue rules regulating pilotage fees. The Court distinguished the Commission's authority to promulgate rules in accordance with its "constitutionally mandated duty to regulate public utilities" and its authority to promulgate rules pursuant to a legislative grant of authority. In theHayden ruling the Court quoted their finding in Giallanza v. LouisianaPublic Service Commission, 412 So.2d 1369 (La. 1982):
 We find Consumer's League is clearly distinguishable from the present case. Consumer's League dealt with the LPSC's powers in the context of its constitutionally mandated duty to regulate public utilities. By contrast, the LPSC's authority to regulate pilotage fees is not found in the constitution, but is "other regulatory authority" given to the LPSC by the legislature.
The Court went on to say that, "Under the scheme of La. Const. Art. 4, sec. 21(B), the legislature is allowed to contour this regulatory authority "as provided by law".
Citing Richland Gas Co. v. Hale, 169 La. 300, 125 So. 130 (1929), theHayden Court went on to say: "Even in the context of public utilities and common carriers, this court has never interpreted the LPSC's control over its rules regulations and procedures as unbridled".
The same can be said for the Commission's authority to promulgate the rules required by the Telephone Solicitation Relief Act. The Commission's power to regulate telemarketers is not constitutionally created, but legislatively mandated. The legislature spelled out the specific rulemaking duties of the Commission, the broadest of which was to promulgate rules for the administration of the "Do Not Call" program. In this case the Commission went far beyond their authority and made a substantive change in the law. Under the Act, the Commission's rulemaking authority is a "duty provided by law" and it does not include the authority to make new law by expanding the definition of "political activity".
Not directly addressed by the Court in Hayden, is whether the Commission is subject to the Administrative Procedures Act (LSA-R.S. 49:950
et seq.) when rule-making pursuant to a grant of legislative authority. The Administrative Procedures Act (APA) exempts the Public Service Commission from only two provisions, LSA-R.S. 49:968F and LSA-R.S. 49:970, implying that the remaining provisions are applicable to the Commission. LSA-R.S. 49:968F instructs the legislature on how to proceed should they determine that a rule or fee is unacceptable and LSA-R.S. 49:970 provides for the Governor's veto of a rule. This raises the question as to whether the Commission properly used their power to issue a Commission Order or whether they should have promulgated rules in accordance with the APA thereby allowing for legislative oversight.
It is the opinion of the Attorney General that the expansion of the definition of political activity to include telephonic solicitations by newspapers is a usurpation of a legislative function. The Commission not only exceeded its authority by making new law but did so contrary to the express will of the legislature. It also appears that the Commission may have circumvented the requirements of the Administrative Procedures Act when promulgating the "Do Not Call" rules.
Very truly your,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _____________________________ ISABEL WINGERTER ASSISTANT ATTORNEY GENERAL